IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GRIZZARD COMMUNICATIONS GROUP, | ) ) ) | |
| Plaintiff, | ) ) | 4:05CV3182 |
| v. | ) ) | |
| MICHAEL MONK, JERRY BUCKLER, JIM TEDFORD, and ALPHA DOG MARKETING, | ) ) ) ) | MEMORANDUM AND ORDER ON DEFENDANT MICHAEL MONK'S MOTION TO DISMISS |
| Defendants. | ) ) | |

On July 25, 2005, the plaintiff, Grizzard Communications Group, Inc. (Grizzard), filed a complaint against Defendants Michael Monk, Jerry Buckler, Jim Tedford, and Alpha Dog Marketing, Inc., alleging that the defendants' actions caused injuries to the plaintiff's business. (See generally Compl., filing 1.)  The complaint sets forth eight "theories of recovery" against the defendants.  (See id.)  The eighth theory of recovery, which is directed solely at Defendant Monk, is based upon allegations that Monk breached certain terms of his employment agreement with Grizzard.  (See id., ¶¶ 56-65.)  Now before me is Defendant Monk's motion to dismiss Grizzard's eighth theory of recovery.  (Filing 16.)  For the following reasons, I find that the defendant's motion must be granted in part.

## I.   BACKGROUND

Grizzard is a "direct marketing firm" with offices in Atlanta, Georgia; Los Angeles, California; New York, New York; Houston, Texas; and Lincoln, Nebraska.  (See Compl., ¶¶ 1, 8; Answer, filing 15, ¶¶ 1, 8.)  On or about August 31, 1999, Monk entered into an employment agreement with Grizzard and GCG Merger Corp.  (Filing 17, Monk Aff. ¶ 1; id. Ex. A.)  The agreement was amended on February 24, 2000, (see filing 17, Monk Aff., Ex. B), but the amendment did not alter terms, provisions, and conditions of the agreement that are central to the

1

issues raised in this motion.  The relevant provisions of the agreement state as follows.

       1.  <u>Nature of Employment; Term of Employment</u>.  The Company hereby employs Employee and Employee agrees to serve the Company upon the terms and conditions contained herein subject to the provisions of Section 9, commencing as of the Effective Time and continuing for a period of three (3) years (the "Initial Term").[1]  Following the Initial Term, this Agreement and Employee's employment hereunder shall renew from year to year (each a "Renewal Term") unless the Company or Employee shall notify the other in writing not later than thirty (30) days prior to the end of the Initial Term or the then current Renewal Term that such party elects for this Agreement and Employee's employment hereunder to terminate at the end of the Initial Term or the then current Renewal Term, as the case may be.  As used herein, "Term" means this Initial Term and any subsequent Renewal Term.

    . . . .

       6.  <u>Non-Competition; Non-Solicitation</u>.

    (a)  Employee agrees that during the Employment Term he/she will not engage in, or otherwise directly or indirectly be employed by, or act as consultant, or be a director, officer, employee, owner, agent, member or partner of, any other business of organization that is or shall then be competing with the Company, MSGI or any subsidiary of MSGI . . . .

    (b)  If this Agreement is terminated by the Company for Cause (as such term is defined in Section 9) or if Employee voluntarily terminates his/her employment hereunder, Employee, for a period of three (3) years from the date of such termination, shall not, directly or indirectly, solicit or encourage any person who was a customer of the Company, MSGI[2] or Grizzard during the one (1) year prior to the date of such termination to cease doing business with the Company, MSGI or any subsidiary of MSGI.

    (c)  If this Agreement is terminated by the Company for Cause or if Employee voluntarily terminates his/her employment hereunder, Employee agrees that for a period of two (2) years following the termination of employment with the Company, Employee will not directly, or indirectly by assisting others, recruit or hire, or attempt to recruit or hire any other employee of the Company or its affiliates.

    . . . .      . . . .

       11.  <u>Survival</u>.  The covenants, agreements, representations, and warranties contained in or made pursuant to this Agreement shall survive

---

[1]"The Company" is the "surviving corporation of the merger" between Grizzard and GCG Merger Corp.  (Filing 17, Monk Aff., Ex. A at 1.)  Monk is the "Employee" (<u>Id.</u>)

[2]According to the February 24, 2000, amendment to the agreement, MSGI is the parent of GCG Merger Corp.  (Filing 17, Monk Aff., Ex. B at 1.)

Employee's termination of employment, irrespective of any investigation made by
or on behalf of any party.
        . . . .
        17.    Counterparts; Governing Law. . . . [This Agreement] shall be
governed by, and construed in accordance with, the laws of the State of New
York, without giving effect to the rules governing the conflicts of laws. . . .

(Filing 17, Monk Aff., Ex. A.)

On or about February 18, 2003, Monk received a letter from Grizzard informing him that

his employment agreement would not be renewed at the conclusion of the "Initial Term." (See

filing 17, Monk Aff., Ex. C.) Citing section 1 of the agreement, Grizzard explained that the

"Initial Term" of the agreement was due to expire on March 22, 2003, and that the agreement

would automatically renew for a one-year renewal term "unless either [Monk] or the Company

provide written notice to terminate the Agreement." (Id.) Grizzard advised Monk to "please

consider this written notice of the Company's decision to terminate your agreement." (Id.)

Grizzard also stated,

        As a result, your employment with [Grizzard] under the terms of the
        Agreement will technically end on Saturday March 22, 2003. When you return to
        work on Monday, March 24, 2003, you will be employed in the same position at
        the same rate of pay, but employed on an "at-will" basis. As a legal matter, that
        means that the Company and you each have the right to end the employment
        relationship for any reason at any time, with or without notice and with or without
        cause, and the terms and conditions of your employment will be left to the
        discretion of management.

        Please take a moment to review your Agreement. You will note there are
        post-employment restrictions which were part of the original consideration for
        providing you with the Agreement. There are certain restrictions which survive
        the termination of the Agreement.

(Filing 17, Monk Aff., Ex. C.)

Monk continued to work for Grizzard until he resigned on May 31, 2005. (See filing 17,

Monk Aff. ¶ 14.) On July 25, 2005, Grizzard filed a complaint alleging, inter alia, that Monk

violated the terms of the employment agreement by: (1) "establishing and . . . becoming a

shareholder, officer and director" of a competing company while he was still employed by

3

Grizzard; (2) soliciting Grizzard's clients; and (3) recruiting and hiring Grizzard's employees to work for Alpha Dog Marketing, Inc. (See Compl., filing 1, ¶¶ 14-18, 61-63.) These allegations form the basis of the eighth "theory of recovery," or cause of action, set forth in the complaint. (See id. ¶¶ 56-65.) Monk has moved to dismiss the eighth cause of action, (see filing 16), and my analysis of this motion follows.

## II.   STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), "a motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citation omitted); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In resolving such motions, all well-pleaded allegations in the complaint must be taken as true, and the complaint and all reasonable inferences arising therefrom must be weighed in favor of the plaintiff. Morton, 793 F.2d at 187. When considering a Rule 12(b)(6) motion to dismiss, the court has the discretion to decide whether it will accept materials outside the pleadings. See Skyberg v. United Food and Commercial Workers International Union, 5 F.3d 297, 302 n.2 (8th Cir. 1993). If the Court accepts outside information, it must convert the motion to dismiss to one for summary judgment. See Fed. R. Civ. P. 12(b)(6). Upon conversion, the court applies the standard for summary judgment set forth in Rule 56. Id.

In this case the parties have submitted materials outside the pleadings, and they acknowledge that it would be appropriate to apply the summary judgment standard to resolve the instant motion. (See filing 18 at 7; filing 22 at 7-8.) Since the parties have had a "reasonable opportunity to present all material made pertinent to [this] motion by Rule 56," I shall proceed to analyze the motion as one for summary judgment. Fed. R. Civ. P. 12(b).

A motion for summary judgment shall be granted by the court when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when there is sufficient evidence favoring the party opposing

4

the motion for a jury to return a verdict for that party.  Id.  In determining whether a genuine

issue of material fact exists, the evidence is to be taken in the light most favorable to the

nonmoving party.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  If the moving party

meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts

to the nonmoving party to produce evidence of the existence of a genuine issue for trial.  Celotex

Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Anderson, 477 U.S. at 256.  The nonmoving party

"must present affirmative evidence in order to defeat a properly supported motion for summary

judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his

pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at

256 (citing Federal Rule of Civil Procedure 56(e)).

## III.   ANALYSIS

### A.   Whether the Non-competition and Non-solicitation Covenants "Survived" the Termination of the Employment Agreement on March 22, 2003

Monk argues first that Grizzard's eighth cause of action must be dismissed because

Grizzard automatically lost its right to enforce the non-competition and non-solicitation

provisions of the agreement when the agreement was terminated in March 2003.  (See filing 18 at

7-10.)  In support of this argument, Monk relies upon Financial Guardian, Inc. v. Kutter, 630

S.W.2d 197 (Mo. Ct. App. 1982), and In re Bennett Paper Corp., 68 B.R. 515 (Bankr. E.D. Mo.

1986).  In Kutter, the parties entered into an employment contract that provided that Kutter could

not compete with Financial Guardian "for three years after leaving the employ of Financial

Guardian."  630 S.W.2d at 197.  "Financial Guardian's petition incorporated the employment

contract, asserted that the contract was not renewed on July 1, 1979, that Kutter continued in the

employ of Financial Guardian until May 31, 1980, and that Kutter had become associated with a

competing insurance company."  Id. at 197-98.  The court upheld the dismissal of the petition,

noting that "Financial Guardian pled itself out of court" because "the employment contract

containing the restrictive covenant was admittedly terminated before the restriction became

operative."  Id. at 198.  The court explained,

Under the unambiguous terms of the contract, the covenant would come into play only if Kutter left Financial Guardian's employ during the contract term.  The contract had to have been in effect at the end of Kutter's employment for the covenant to come into play.  Since it terminated the contract, yet allowed Kutter to stay in its employ for eleven months after the termination, Financial Guardian cannot now seek to have the covenant enforced.

Id.

Kutter was cited in In re Bennett Paper Corp., 68 B.R. 515, 518 (Bankr. E.D. Mo. 1986), for the proposition that, "upon the expiration of [an] employment agreement, [a] covenant not to compete [is] of no further effect."   However, it seems to me that Kutter does not state so broad a rule.  On the contrary, Kutter states quite clearly that "the unambiguous terms of the contract" provided that "the covenant would come into play only if Kutter left Financial Guardian's employ during the contract term."  Kutter, 630 S.W.2d at 198.  In other words, Kutter stands for the proposition that the terms of the employment agreement must be studied to determine whether its covenants are enforceable when an employee remains employed after the agreement is terminated.  See also Marwaha v. Woodridge Clinic, S.C., 790 N.E.2d 974 (Ill. Ct. App. 2003) (holding that pursuant to the employment agreement's terms, the time limit on a covenant not to compete began to run when the agreement terminated, as opposed to when the employee was subsequently terminated).  To the extent that Bennett Paper Corp. expands this rule, I decline to follow it.  More importantly, to the extent that Monk relies upon Kutter and Bennett Paper Corp. for the proposition that covenants are inherently unenforceable–regardless of the language and terms of the contract–whenever an employee continues to work after the contract has expired, his reliance is misplaced.[3]

Since I am not persuaded that the covenants were automatically rendered unenforceable by the mere fact that the agreement was terminated in March 2003, I must reject Monk's first argument that the eighth cause of action must be dismissed.

---

[3]I note parenthetically that there is no indication that the courts in Kutter or Bennett Paper Corp. considered agreements that contained survival clauses, such as the one appearing in the agreement at issue in this case.

6

**B.    Whether the Non-competition and Non-solicitation Covenants Are Inapplicable in this Case Pursuant to the Plain Language of the Employment Agreement**

Monk argues next that the plain and unambiguous language of the covenants demonstrates that they are not enforceable in this case.  (See filing 18 at 12-15.)  I agree.

In its eighth cause of action, Grizzard alleges that Monk violated the employment agreement by soliciting Grizzard's clients.  (See Compl., filing 1, ¶¶ 18, 62.)  The applicable covenant appears in section 6(b) of the employment agreement and states,

> If this Agreement is terminated by the Company for Cause (as such term is defined in Section 9) or if Employee voluntarily terminates his/her employment hereunder, Employee, for a period of three (3) years from the date of such termination, shall not, directly or indirectly, solicit or encourage any person who was a customer of the Company, MSGI or Grizzard during the one (1) year prior to the date of such termination to cease doing business with the Company, MSGI or any subsidiary of MSGI.

(Filing 17, Monk Aff., Ex. A, § 6(b) (emphasis added).)  This provision plainly states that the non-solicitation covenant is triggered only if the agreement is terminated by Grizzard for cause or if Monk "voluntarily terminates his/her employment hereunder."  It is undisputed that the employment agreement was not "terminated by the Company for Cause."  Therefore, the non-solicitation covenant was not triggered, and Grizzard's claim based upon it must fail, unless Monk "voluntarily terminate[d] [his] employment hereunder."

Monk argues that the term "hereunder" plainly means "under this agreement."  (See filing 18 at 12, 14-15.)  In response, Grizzard asserts that the term "hereunder" is ambiguous because it "can also refer to the parties to an agreement rather than to matters that arise under the agreement."  (Filing 22 at 14.)  Grizzard claims that since the term is ambiguous, "extrinsic evidence must be considered . . . and summary judgment is not proper."  (Id. at 15.)

"A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms."  Gary's Implement, Inc. v. Bridgeport Tractor Parts, Inc., 702 N.W.2d 355, 366 (Neb. 2005) (citing Spanish Oaks v. Hy-Vee, 655 N.W.2d 390 (Neb. 2003)).  In other words, no extrinsic evidence may be considered if a contract is unambiguous.  See, e.g., South Road Associates, L.L.C. v. International Business Machines Corp., 826 N.E.2d 806, 809 (N.Y. 2005).  "[A] contract is ambiguous when a word, phrase, or

7

provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. Gary's Implement, Inc., 702 N.W.2d at 366 (citing Jensen v. Board of Regents, 684 N.W.2d 537 (Neb. 2004). "Whether a contract is ambiguous is a matter of law." Id. (citing Big River Constr. Co. v. L & H Properties, 681 N.W.2d 751 (Neb. 2004)).

I have studied the entire employment agreement, and I find no instance where the word "hereunder" might plausibly mean something other than "under the employment agreement."[4]  I note that this meaning is consistent with the definition of the word "hereunder" that appears in my dictionary.  See Webster's Third New International Dictionary 1059 (1969) (defining "hereunder" as "a: under this written statement . . . b: under this agreement : in accordance with the terms of this document").  I also note that Grizzard itself attributed the meaning "under the terms of the agreement" to the term "hereunder" as it appears in section 1 of the employment agreement.[5]  (See filing 17, Monk Aff., Ex. C.)  It is basic that "[u]nless a contrary intent is evident, words used in one sense in one part of a contract are deemed of like significance in another part." Marwaha v. Woodridge Clinic, S.C., 790 N.E.2d 974, 976-77 (Ill. Ct. App. 2003) (quoting Cedar Park Cemetery Ass'n v. Village of Calumet Park, 398 Ill. 324, 334, 75 N.E.2d

---

[4]The term "employment hereunder" appears in sections 1, 2, 6 and 9 of the agreement; the terms "duties hereunder," "services hereunder," and "obligations hereunder" appear in sections 5, 9, and 10 of the agreement; and the term "hereunder" appears in several additional places in the agreement alongside words that do not connote "employment."  (See, e.g., filing 17, Monk Aff., Ex. A, § 7 (using the term "Trade Secret hereunder").)

[5]Section 1 of the employment agreement states, "Following the Initial Term, this Agreement and Employee's employment hereunder shall renew from year to year . . . unless the Company or Employee shall notify the other in writing not later than thirty (30) days prior to the end of the Initial Term . . . that such party elects for this Agreement and Employee's employment hereunder to terminate at the end of the Initial Term . . . ."  (Filing 17, Monk Aff., Ex. A, § 1 (emphasis added).)  Citing this provision, Grizzard notified Monk via letter dated February 18, 2003, that the agreement would terminate at the end of the Initial Term and that Monk's "employment . . . under the terms of the Agreement will technically end on Saturday March 22, 2003."  (Id., Ex. C (emphasis added).)  It then continued Monk's employment on an at-will basis.  (See id.)  Obviously, Grizzard did not intend for Monk's actual employment to end when it exercised its option to terminate the agreement at the end of the Initial Term, and it clearly considered "employment hereunder" to mean "employment . . . under the terms of the agreement," rather than "employment" in an absolute sense.

874 (1947)).  In this case, there is no reason to conclude that the term "employment hereunder," which undisputedly means "employment under the employment agreement" when it appears in section 1, means something different when it appears in section 6 of the same agreement.

Grizzard argues that the term "hereunder" cannot mean "under the employment agreement," because this would render the survival clause "superfluous" and frustrate Grizzard's intent that the covenants remain in effect beyond the term of the employment agreement.  (See filing 22 at 13-15.)  Thus, I take it, Grizzard submits that there is evidence of a "contrary intent" that would support a finding that even if "hereunder" means "under the employment agreement" when it appears in section 1, it means something else when it appears in section 6.  It is true that "[a] contract must be construed as a whole, and, if possible, effect must be given to every part thereof."  Big River Construction Co. v. L & H Properties, Inc., 681 N.W.2d 751, 756 (Neb. 2004).  See also Two Guys From Harrison-N.Y., Inc. v. S.F.R. Realty Assoc., 472 N.E.2d 315, 318 (N.Y. 1984) ("In construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless." (Citations omitted)).  However, attributing the plain and ordinary meaning to the term "hereunder" in section 6 of the agreement does not render the survival clause meaningless or superfluous.  Indeed, I have concluded that the covenant does "survive," (see supra Part III.A); but the covenant simply does not apply, under its own plain and unambiguous terms and regardless of whether it "survives" or not, unless the "Agreement is terminated by the Company for Cause . . . or . . . Employee voluntarily terminates his/her employment hereunder."  In short, the fact that Grizzard intended the covenant to "survive" does not shed light on the meaning of the terms contained within the covenant or persuade me that the term "hereunder" does not carry its plain and ordinary meaning.

The term "hereunder" as it is used in the covenant appearing in section 6(b) of the agreement plainly and unambiguously means "under the employment agreement."  The record establishes that Grizzard, not Monk, voluntarily terminated Monk's employment "under the employment agreement" on March 22, 2003.  Thereafter, Monk continued his employment with Grizzard under a new at-will arrangement.  When Monk voluntarily terminated his employment in May 2005, he did not terminate his employment "under the employment agreement," but under the new arrangement.  Therefore, the non-solicitation covenant appearing in section 6(b) of

9

the agreement has not been triggered.  There is no genuine issue for trial, and Grizzard's eighth cause of action will be dismissed to the extent that it is based upon an alleged violation of section 6(b) of the employment agreement.

The foregoing analysis applies with equal force to Grizzard's claim that Monk violated the employment agreement by recruiting and hiring Grizzard's employees to work for Alpha Dog Marketing, Inc., which is also set forth in Grizzard's eighth cause of action.  (See Compl., filing 1, ¶ 63.)  The applicable covenant appears in section 6(c) of the employment agreement and plainly states that it applies "[i]f this Agreement is terminated by the Company for Cause or if Employee voluntarily terminates his/her employment hereunder."  Since the record establishes that the agreement was not terminated by Grizzard for cause and that Monk did not voluntarily terminate his employment under the employment agreement, Grizzard's eighth cause of action will be dismissed to the extent that it is based upon an alleged violation of section 6(c) of the employment agreement.

In its eighth cause of action, Grizzard has also alleged that Monk violated the employment agreement by "establishing and . . . becoming a shareholder, officer and director" of a competing company while he was still employed by Grizzard.  (Compl., filing 1, ¶¶ 14, 61.)  I notice that Monk has failed to argue specifically that this claim ought to be dismissed, and has therefore failed to meet its initial burden of establishing that there is no genuine issue for trial and that it is entitled to judgment as a matter of law on this claim.  Quite understandably, Grizzard has not addressed this claim in its responsive filings.  As a result, this claim shall not be dismissed, and Monk's motion to dismiss the eighth cause of action must be denied insofar as this claim is concerned.

### C.    Monk's Remaining Arguments and His Motion to Strike Are Moot

Monk has also argued that the non-solicitation and non-competition covenants set forth in sections 6(b) and 6(c) of the employment agreement are unenforceable under Nebraska law.  (See filing 18 at 15-22.)  This argument is moot in light of my finding that the plain and unambiguous terms of these covenants render them inapplicable.  (See supra Part III.B.)

Finally, I note that Monk has moved to strike portions of the affidavit submitted by

10

Grizzard in opposition to Monk's motion to dismiss.  (See filing 25.)  Monk's objections are not without merit; however, none of the disputed evidence affects my findings that sections 6(b) and (c) of the employment agreement are inapplicable on their face and that Monk has failed to demonstrate that it is entitled to judgment on any claims based upon section 6(a).  The motion to strike will therefore be denied as moot.

**IT IS ORDERED** that:

1.      Defendant Michael Monk's motion to dismiss, filing 16, is granted in part;

2.      The plaintiff's claims against Monk are dismissed insofar as they are based upon sections 6(b) and (c) of the employment agreement, but otherwise remain viable;

3.      Monk's motion to strike, filing 25, is denied as moot.

Dated October 11, 2005.

                                        BY THE COURT

                                        s/  Warren K. Urbom
                                        United States Senior District Judge

11